NIED.[18]  The Clerk of Court is directed to mail a copy of this report to the Defendant at the Blount County Jail.

June 13, 2013.

Robert HATMAKER, Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY, Defendant.

Case No. 1:12–CV–145.

United States District Court, E.D. Tennessee, at Chattanooga.

Aug. 7, 2013.

Eric L. Buchanan, R. Scott Wilson, Jeremy L. Bordelon, Eric Buchanan & Associates, PLLC, Chattanooga, TN, for Plaintiff.

Tammy O. Combs, U.S. Department of Justice, Chattanooga, TN, for Defendant.

## *MEMORANDUM*

CURTIS L. COLLIER, District Judge.

Plaintiff Robert Hatmaker ("Plaintiff") brought this action on May 2, 2012, seeking judicial review of the final decision of the Commissioner of Social Security ("Defendant") denying Plaintiff a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. The Court referred the matter to United States Magistrate Judge William B. Mitchell Carter, pursuant to 28 U.S.C. § 636(b) and in accordance with Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation ("R & R") regarding the disposition of Plaintiff's motion for judgment on the pleadings (Court File No. 11) and Defendant's motion for summary judgment (Court File No. 13). The magistrate judge filed a R & R (Court File No. 16) recommending the decision of the Commissioner be affirmed, Plaintiff's motion for judgment on the pleadings be denied (Court File No. 11), Defendant's motion for summary judgment be granted (Court File No. 13), and the case be dismissed. Plaintiff timely filed an objection to the R & R (Court File No. 17). For the following reasons, the Court will **ACCEPT** and **ADOPT** the magistrate judge's R & R (Court File No. 16).

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Medical History

Plaintiff filed a Title II application for a period of disability, disability benefits, and

supplemental security income on February 9, 2009. These claims were denied in April and August 2009, after which he sought a hearing before an Administrative Law Judge ("ALJ"). The hearing was held June 7, 2010. The ALJ issued his decision on September 24, 2010, in which he determined Plaintiff did not qualify for benefits. Plaintiff sought leave from the Appeals Council, which denied his request for review on March 12, 2012. The instant action ensued.

Plaintiff, now fifty-one-years old, was forty-nine-years old at the time of the decision. Plaintiff does not have a high school diploma and had previously worked as a construction painter and roofer (Tr. 22). The alleged onset date of Plaintiff's disability is December 31, 2003 (Tr. 13). The ALJ determined Plaintiff has not engaged in substantial gainful activity since that date (Tr. 15). Plaintiff established the following impairments before the ALJ: degenerative changes of the lumbar spine, essential hypertension, slight tremor of the left upper extremity, depression, and anxiety (Tr. 15). The ALJ concluded Plaintiff could perform light, unskilled work with only occasional grasping with his left upper extremity (Tr. 19). Although the ALJ found Plaintiff could not perform his prior relevant work, based on the testimony of a vocational expert he concluded there were a significant number of jobs in the economy Plaintiff could perform (Tr. 22).

The ALJ considered the examinations of Benjamin Biller, M.S.,[1] and Dr. William Holland. Mr. Biller, a licensed psychological examiner, evaluated Plaintiff on March 2, 2009 at the request of the Social Security Administration (Tr. 20). Mr. Biller found Plaintiff's appearance and behavior to be unremarkable, and his activities of daily living uncompromised by mental limitation. He rated his Global Assessment of Functioning ("GAF") score as 70, which suggests some mild symptoms. Dr. Holland evaluated Plaintiff on April 3, 2009, again at the request of the Social Security Administration. Plaintiff reported a history of low back pain, and pain in his right hip and lower leg. Plaintiff was able to sit, stand in seated position, and got on and off the examination table without much difficulty. He exhibited normal range of motion with a slight tremor in his left arm. Dr. Holland examined him again in July 2010 without significant change in his assessment.

Plaintiff, on the other hand, stresses the examination of his treating physician, Dr. Frank Wood. Plaintiff was evaluated by Dr. Wood in March 2009, when Plaintiff sought treatment for hip pain and depression. Dr. Wood prescribed blood pressure medication and medication for depression and pain. In June 2009, he stated Plaintiff possibly could be experiencing rheumatoid arthritis, but blood tests returned negative for that diagnosis. Despite the prescribed medicine, Plaintiff's blood pressure continued to exceed proper parameters.

In August 2009, Plaintiff was involved in a motor vehicle accident. He was treated for a nosebleed and left shoulder pain at the emergency room. He did not have any fractures and x-rays revealed slight facet joint degenerative arthritis in his spine and small anterior osteophytes.

**B. Procedural Background**

The ALJ analyzed Plaintiff's claim under the five-step framework outlined in 20 C.F.R § 404.1520(a)(4) [2]:

---

1. Mr. Biller's examination was supervised by Dr. James Milliron.

2. Because Plaintiff sought a period of disability and disability insurance benefits, as well as supplemental security income, the ALJ applied this regulation and 20 C.F.R.

1. If claimant is doing substantial gainful activity, he is not disabled.
2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Nejat v. Commissioner of Soc. Sec.*, 359 Fed.Appx. 574, 576 (6th Cir.2009) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir.1997)). At steps one through four, the claimant bears the burden of proof. *Id.* However, at step five, the burden shifts to the Commissioner to identify jobs in the economy that the claimant could perform considering his impairments. *Id.*

At step one, the ALJ concluded Plaintiff had not performed any substantial gainful activity since the alleged onset date of his condition. The ALJ then concluded Plaintiff has severe impairments, namely degen-

erative changes of the lumbar spine, essential hypertension, slight tremor of the left upper extremity, depression, and anxiety. At step three, however, the ALJ concluded Plaintiff's impairments or combination thereof did not meet or medically equal a listed impairment. At step four, the ALJ found Plaintiff did not have the ability to perform past relevant work. However, at step five, the ALJ concluded other work exists in the national economy that accommodates Plaintiff's residual functional capacity and vocational factors. Accordingly, the ALJ concluded Plaintiff was not disabled and not entitled to the benefits he seeks.

After the Appeals Council denied Plaintiff's request for review, he sought relief in this court. Plaintiff argued before the magistrate judge that the ALJ erred in failing to sufficiently address Dr. Wood's opinions regarding Plaintiff's mental restrictions and limitations and his physical limitations. As to the his mental limitations, the magistrate judge concluded, although the ALJ did not explicitly mention Dr. Wood's assessment of Plaintiff's mental limitations, this failure was harmless error because it is evident from the ALJ's opinion he considered the treatment of Plaintiff's physician as well as the other opinions in the record. Moreover, Dr. Wood's assessment was so patently defective the ALJ could not have credited it. As to Plaintiff's physical limitations, the magistrate judge concluded the ALJ provided adequate reasons for rejecting the treating physician's opinion. The magistrate judge found the ALJ properly considered Dr. Wood's assessment unsupport-

§ 416.920(a)(4). Below, where the Court discusses the treating source rule in 20 C.F.R. § 404.1527(c), the companion rule for supplemental security income in 20 C.F.R. § 416.927(c) is also relevant. The relevant portions of the regulations are "identically

worded and interpreted," *Johnson–Hunt v. Comm'r of Soc. Sec.*, 500 Fed.Appx. 411, 417 n. 6 (6th Cir.2012), and the Court has accordingly only cited to the former for sake of simplicity.

ed by and inconsistent with the record. Finding no error sufficient to remand to the Commissioner, the magistrate judge recommends the ALJ's opinion be affirmed. Plaintiff timely objected.

## II. STANDARD OF REVIEW

This Court must conduct a de novo review of those portions of the R & R to which objection is made and may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1). The Court's standard of review is essentially the same as the magistrate judge's—review is limited to determining if the ALJ's findings are supported by substantial evidence and if proper legal standards were used. 42 U.S.C. § 405(g); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir.1989). "Substantial evidence" means evidence a reasonable mind might accept to support the conclusion at issue. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). Substantial evidence is greater than a scintilla but less than a preponderance. *Brainard*, 889 F.2d at 681. If supported by substantial evidence, the Court must affirm the ALJ's findings, even if substantial evidence also supports the opposite conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir.2003). The substantial evidence standard presupposes there is a zone of choice within which the decision-makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir.1994). The ALJ need not discuss every aspect of the record or explain every finding at length but must "articulate with specificity reasons for the findings and conclusions that he or she makes" to facilitate meaningful judicial review. *Bailey v.*

*Comm'r of Soc. Sec.*, No. 98–3061, 1999 WL 96920, at *4 (6th Cir. Feb. 2, 1999).

## III. DISCUSSION

Plaintiff objects to the magistrate judge's rejection of both his original arguments: (1) the ALJ erred by ignoring Dr. Wood's opinion of Plaintiff's mental restrictions and limitations; and (2) the ALJ did not adequately consider the regulatory factors when rejecting Dr. Wood's opinion of Plaintiff's physical limitations.

### A. Treating Source Rule

The regulations implementing the Social Security Act require the ALJ generally to afford the opinion of a claimant's treating physician substantial deference. 20 C.F.R. § 404.1527(c)(2); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004). Such deference, however, is due only when a treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" before the ALJ. 20 C.F.R. § 404.1527(c)(2). If the ALJ decides not to accord the opinion of a treating physician controlling weight, the ALJ relies on a number of factors—including the length of the treatment relationship and frequency of evaluation, nature and extent of the treatment relationship, how well supported by medical evidence the treating physician's opinion is, the consistency of the treating physician's opinion with the record as a whole, and whether the treating physician is a specialist—to determine how much weight to give the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2)-(6). Ultimately, the determination of disability is "the prerogative of the Commissioner, not the treating physician." *Warner v. Comm'r Soc. Sec.*, 375 F.3d 387, 390 (6th Cir.2004) (quoting *Harris v. Heckler,*

756 F.2d 431, 435 (6th Cir.1985)) (internal alteration omitted).

The agency's regulations require the ALJ to provide "good reasons" for discounting a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir.2013) (quoting SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996)). Failure to follow this procedural requirement "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir.2007). Failure to give good reasons may require remand, because the rule exists to provide the claimant adequate notice and fair process. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009); *see also Wilson*, 378 F.3d at 544.

■ As Plaintiff notes, "[a] court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely." *Wilson*, 378 F.3d at 546. An ALJ's failure to strictly comply with the rules is not, however, always cause to remand the case back to the Commissioner. The Sixth Circuit has identified a number of circumstances in which a violation of the

rules would constitute harmless error: (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) "where the Commissioner has met the goal of § 1527[(c)][3](2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Friend v. Comm'r of Soc. Sec.*, 375 Fed.Appx. 543, 551 (6th Cir.2010) (quoting *Wilson*, 378 F.3d at 547). In the third circumstance, courts consider whether "the procedural protections at the heart of the rule may be met when the 'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is *indirectly* attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments." *Id.* (citing *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 470–72 (6th Cir.2006); *Hall v. Comm'r of Soc. Sec.*, 148 Fed.Appx. 456, 464 (6th Cir.2006)) (emphasis in original). "If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused." *Id.*

## B. Mental Limitations

As the Commissioner concedes, the ALJ did not explicitly consider Dr. Wood's assessment of Plaintiff's mental restrictions and limitations, nor did he enumerate any specific reasons for failing to accord it controlling weight. The magistrate judge

---

**3.** In February 2012, the Social Security Administration redesignated paragraphs (d) through (f) of 20 C.F.R. § 404.1527 to (c) through (e). How We Collect and Consider Evidence of Disability, 77 Fed.Reg. 10,651, 10,656 (Feb. 23, 2012). Accordingly, prior to that date, references to the relevant regulatory factors reference subparagraph (d), rather than subparagraph (c). Similar changes have been made throughout this opinion without indicating the change, save for quotations wherein the change is indicated with brackets. The same renumbering was performed to the companion rule at 20 C.F.R. § 416.927.

concluded this *de minimis* violation of the regulation constituted harmless error.

Although the ALJ failed to discuss Dr. Wood's assessment of Plaintiff's mental restrictions and limitations, he did consider Plaintiff's mental condition and discussed why that condition did not amount to disability.

The claimant has further alleged disability secondary to anxiety and depression. Dr. Wood did prescribe medication for depressive symptomatology (Exhibit 11F) and the claimant has continued to allege sleep disturbances and excessive worry (Exhibit 3F). However his statements do not suggest mental limitations of such severity as to preclude any work activity. Indeed, the claimant has not sought mental health treatment and his GAF score was noted to be 70 suggesting only a mild limitation of function (Exhibit 3F). Mentally, the claimant can still perform unskilled work.

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. As for the opinion evidence, Mr. Biller opined the claimant is functioning in the average range of intelligence without psychotic symptoms. He appeared to have a mild level of depression and anxiety secondary to his declining physical health and related life problems. He also opined his ability to understand and remember simple and/or detailed instructions appears to be unaffected; his ability to sustain concentration and be persistent with work processes appears

to be mildly affected due to depression and anxiety; his ability to interact with peers and supervisors in a standardized work setting appears to be minimally affected due to depression and anxiety; and his ability to adapt to changes in the work environment and to be aware of hazards appears to be unaffected (Exhibit 3F). I find Mr. Biller's opinion well supported by the record and give it substantial weight. His opinion is substantiated by medically acceptable clinical diagnostic techniques and is consistent with the other substantial evidence in the claimant's case record.

. . . .

The State agency's psychological examiners reviewed the claimant's file as it stood on March 16, 2009 and opined the claimant's mental impairments were not severe. I find this opinion to be inconsistent with the medical record as the claimant's treating physician prescribed medication for the claimant's depressive symptomatology. Therefore, I give this opinion little weight.

... Further, I find the claimant would encounter some difficulty functioning in some work environments due to his depression and anxiety. However, I do not find credible evidence to support the claimant's physical and mental limitations preclude all work activity. Indeed, the claimant's statements and testimony, coupled with the overall record, support that he has the residual functional capacity to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, he could sit, with normal breaks, for up to 6 hours in an 8 hour day, he could stand and/or walk, with normal breaks, for up to 6 hours in an 8 hour day, and he could occasionally use his left upper extremity to grasp objects. Further, I find claimant would be able to understand, remember, and carry out

unskilled tasks, despite his mental impairments. These limitations are consistent with light unskilled work.

(Tr. 24–26).

As demonstrated above, the ALJ accorded Dr. Wood's opinion some weight to the extent it convinced the ALJ Plaintiff did, in fact, suffer from a serious mental health condition. The ALJ did not, however, explain why he was relying upon Mr. Biller's opinion over Dr. Woods, nor did he explain why he was not according Dr. Wood's opinion controlling weight. The magistrate judge concluded such a failure was harmless error, because Dr. Wood's opinion was so patently defective the ALJ could not possibly have credited it. The magistrate judge also found the ALJ's evaluation indirectly attacked Dr. Wood's opinion.

■ The Court agrees in part. As an initial matter, the Court cannot agree Dr. Wood's assessment is so patently defective the ALJ could not have credited it. It is true that mental health is outside of Dr. Wood's area of expertise and within Mr. Biller's area of expertise. The rules provide the Commissioner will "generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5); *see also Myatt v. Comm'r of Soc. Sec.*, 251 Fed.Appx. 332, 335 (6th Cir.2007) (upholding ALJ's rejection of treating source opinion in part because "[the treating source's] diagnosis of disability partially relied on his assessment of [Plaintiff's] mental health, an area outside of [the treating source's] expertise"). Moreover, as the magistrate judge noted, the first and only time Dr. Wood diagnosed any sort of mental impairment was the day *after* he completed the opinion form discussing Plaintiff's mental limitations (*see* Tr. 284, 289). Nothing else in

his treatment notes supports his findings of mental impairment. *See Coldiron v. Comm'r of Soc. Sec.*, 391 Fed.Appx. 435, 441 (6th Cir.2010) ("[A]n ALJ must give a treating physician's opinion controlling weight only if the opinion relies on objective medical findings, and substantial evidence does not contradict it.") (citations omitted).

Yet the fact remains the ALJ *did* credit Dr. Wood's opinion to some degree. The ALJ concluded the State's psychological examiners' opinions were inconsistent with the medical records because Dr. Wood prescribed medication to treat Plaintiff's depression. The Sixth Circuit has suggested, where an ALJ relies on a doctor's opinion in part, the opinion cannot then be considered patently defective. *See Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir.2011) ("It cannot be said that Dr. Vishnupad's opinions are patently deficient, because the ALJ found them sufficient as to Cole's category of diagnosis."). Such is the case here.

■ However, the Court concludes the ALJ's discussion of Mr. Biller's opinion indirectly attacks Dr. Wood's conclusions. In *Nelson*, the Sixth Circuit concluded the ALJ's discussion of the claimant's mental impairments indirectly attacked both of his treating sources' opinions. The ALJ made brief reference to those opinions and did not explain the weight given to either source's opinion. The court, however, found the ALJ's discussion of the claimant's mental impairments sufficiently realized the goals of the regulation.

Drs. Cook and Peterson[, Plaintiff Nelson's treating sources,] found considerable limitations on Nelson's work abilities, as detailed above. The [vocational expert] noted in her testimony that if Nelson were limited in the ways Drs. Cook and Peterson found, Nelson could not perform on a sustained basis any

jobs that existed in significant number. Dr. Cook's and Dr. Peterson's opinions obviously conflict with the medical opinions of: 1) Drs. Walker and Kupstas, the nonexamining state agency doctors, who found few and only moderate limitations resulting from Nelson's mental impairments; 2) Dr. Rogers, who wrote the discharge report from Nelson's stay at Lakeshore, who found that Nelson had a GAF of 60 and intact memory, concentration, and attention, and fair insight; 3) Dr. Seidner, who determined that Nelson could work alone or in a very reinforcing setting; and 4) Dr. Lew, who assigned Nelson a GAF of 55 and noted that Nelson had intact thought processes, memory, judgment, and insight. In his opinion, the ALJ specifically discussed the findings of Drs. Walker, Kupstas, and Seidner, and the Lakeshore discharge report, which was written by Dr. Rogers. Furthermore, the ALJ explicitly stated that the opinions of Drs. Walker, Kupstas, and Seidner were consistent, thereby further attacking, albeit indirectly, the opinions of Drs. Cook and Peterson. We think it clear that the ALJ's discussion of the record evidence shows that the ALJ found the opinions of Drs. Cook and Peterson to be inconsistent with the other record evidence.

*Nelson,* 195 Fed.Appx. at 471.

Here, the ALJ similarly indirectly attacked Dr. Wood's opinion. When discussing Mr. Biller's opinion evidence, the ALJ noted "I find Mr. Biller's opinion well supported by the record and give it substantial weight. His opinion is substantiated by medically acceptable clinical diagnostic techniques and is consistent with the other substantial evidence in the claimant's case record" (Tr. 24–25). This discussion of Mr. Biller's opinion and reliance on his conclusion is an indirect attack on Dr. Wood's opinion as unsubstantiated and in-

consistent with the record evidence. *See Nelson,* 195 Fed.Appx. at 471 ("[T]he ALJ explicitly stated that the opinions of Drs. Walker, Kupstas, and Seidner were consistent, thereby further attacking, albeit indirectly, the opinions of Drs. Cook and Peterson."). The ALJ also noted, in the context of Dr. Wood's diagnosis, "[h]owever, [Plaintiff's] statements do not suggest mental limitations of such severity as to preclude any work activity. Indeed, the claimant has not sought mental health treatment and his GAF score was noted to be 70, suggesting only a mild limitation of function" (Tr. 24) (emphasis added). The "however" that begins the ALJ's conclusion immediately succeeds discussion of Dr. Wood's diagnosis, implicitly indicating the evidence in the record conflicts with that diagnosis.

Moreover, the ALJ explicitly concluded "[he] d[id] not find credible evidence to support the claimant's physical and mental limitations preclude all work activity" (*id.*). Dr. Wood, however, listed Plaintiff's ability to conduct a number of normal life and work activities as "poor," which means the "[a]bility in this area is usually precluded" (Tr. 291). Such activities included working at a consistent pace, timely completing tasks, and ability to concentrate (Tr. 292–93). The ALJ's conclusion regarding the lack of credible evidence is an indirect attack on the supportability of Dr. Wood's decision. *See Nelson,* 195 Fed.Appx. at 471 ("[I]n this case the ALJ stated that 'there are no clinical and diagnostic findings to establish [that Nelson] has conditions that would significantly compromise' his RFC. That passage, although it does not directly address the medical opinions of Drs. Cook and Peterson, is an indirect attack on the supportability of those opinions.")

Accordingly, the Court agrees with the magistrate judge that the ALJ's discussion

of Plaintiff's mental limitations indirectly attacked Dr. Wood's opinion. The ALJ's failure to explicitly discuss Dr. Wood's opinion therefore constitutes a *de minimis* violation of the rules amounting to harmless error. The Court concludes remand is inappropriate in such a case.

### C. Physical Limitations

■ Plaintiff argues the ALJ improperly accorded Dr. Wood's assessment of Plaintiff's physical limitations little weight after considering only two of the seven above-discussed regulatory factors in 20 C.F.R. § 404.1527(c)(2). Important to the Court's analysis, Plaintiff does not argue in his objection that the ALJ erred when refusing to provide Dr. Wood's assessment *controlling* weight. Rather, Plaintiff argues, after the ALJ concluded controlling weight was inappropriate, the ALJ failed to adequately consider the seven regulatory factors in determining *how much* weight to accord Dr. Wood's opinion. Plaintiff argues the ALJ erred when he failed to consider (1) the length of the treatment relationship and frequency of examination, and (2) the nature and extent of the treatment relations, both of which are § 1527(c)(2) factors. The magistrate judge found the ALJ adequately explained his reasons for discounting Dr. Wood's opinion and relying on the other medical opinions in the record.

The ALJ engaged in a significant discussion of Dr. Wood's opinion and the reasons the opinion should be discounted.

Dr. Wood opined in September 2009 in a physical medical opinion form the claimant could sit for 1 hour, 15 minutes at one time, during an 8 hour day, and he could lift and/or carry no more than 5 pounds infrequently. He further opined the claimant would require bed rest during a normal workday and would require 1 hour of rest for every 45 minutes of work performed. He opined the claimant experiences moderately severe pain daily that would cause lapses in his concentration. Further, the claimant could only infrequently use his hands for fine manipulation, typing, writing, and grasping small objects. Dr. Wood further opined on February 9, 2010 that the claimant was disabled and unable to return to work. He did not provide functional limitations with this opinion (Exhibit 11F).

Social Security Regulations and *Social Security Rule 96–2p* provide that I must consider the opinions of physicians of record, and that controlling weight must be given to the medical opinion of a treating physician, if it is well supported by the medical evidence and if it is not inconsistent with other substantial evidence. I find no evidence to suggest the claimant's degenerative lumbar changes result in such marked limitations as opined by Dr. Wood in September 2009. Indeed, the consultative examiners all noted the claimant was able to ambulate well and move about the exam room without difficulty (Exhibits 3F, 6F, & 13F). Further, the claimant does perform routine household chores (Exhibits 4E, 5E, & 10E), which is inconsistent with the alleged total incapacitation. Further, Dr. Wood's opinion in February 2010 is also inconsistent with the overall record and not supported by objective clinical findings. Therefore, I have not given these opinions any weight.

(Tr. 25).

As noted above, even if an ALJ does not accord a treating source's opinion "controlling weight," the ALJ must still consider the opinion in accordance with the factors listed in 20 C.F.R. § 404.1527(c)(2). "ALJ written decisions must ultimately contain 'good reasons ... for the weight [they]

give' the opinion, and their explanation 'must be sufficiently specific to make clear to any subsequent reviewers the weight [given] to the treating source's medical opinion and the reasons for that weight[.]' " *Francis v. Comm'r of Soc. Sec.*, 414 Fed.Appx. 802, 804 (6th Cir.2011) (quoting § 404.1527(c)(2); SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996)). "Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons ... for the weight ... give[n] [to the] treating source's opinion'— not an exhaustive factor-by-factor analysis." *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)).

In *Francis*, the plaintiff complained the ALJ failed to consider the same factors at issue in this case. *Francis*, 414 Fed.Appx. at 804 ("Francis complains that the ALJ neglected two 20 C.F.R. § 404.1527[(c)](2) factors in weighing Dr. Wakham's opinion: the '[l]ength of the treatment relationship and the frequency of examination' and the '[n]ature and extent of the treatment relationship' between Francis and Dr. Wakham."). Although conceding the ALJ did not mention these factors, the court noted the regulations only require the ALJ provide "good reasons" for the weight given the treating source's opinion, not "an exhaustive factor-by-factor analysis." *Id.* In *Francis*, the ALJ acknowledged the doctor's role as a treating source, and explained the opinion would receive no weight because it was inconsistent with the objective medical evidence, the treatment the plaintiff received, the plaintiff's daily activities, and the assessments of other physicians. The court concluded, "[p]rocedurally, the regulations require no more." *Id.* at 805.

Here, Plaintiff's objection, as the Court understands it, is to the ALJ's failure to consider the two factors discussed above.

Plaintiff argues the ALJ improperly accorded Dr. Holland's opinion more weight than Dr. Wood's, because Dr. Holland only examined Plaintiff once and the nature of the examination was merely for disability evaluation. The Court, however, finds this case is similar to *Francis*. After acknowledging Dr. Wood is Plaintiff's treating source, the ALJ discussed the lack of objective medical evidence to support Dr. Wood's opinion, its inconsistency with the other evidence in the record and Plaintiff's daily activities, and the assessment of other physicians examining Plaintiff. These constitute "good reasons" for according Dr. Wood's opinion no weight, and satisfy the regulations.

Plaintiff also argues the ALJ's consideration of Dr. Holland's opinion was insufficient under the regulations. As to Dr. Holland's opinion, the ALJ stated the following.

Dr. Holland opined on April 3, 2009 that, based on his examination of the claimant that day, he would assign him no limitations. However, on July 22, 2010, Dr. Holland opined the claimant could lift and/or carry up to 50 pounds occasionally, 20 pounds frequently, and 10 pounds continuously. This limitation was directly related to the diagnosis of degenerative changes in the lumbar spine. The claimant could sit, stand, and walk for 2 hours each at one time and for 8 hours each during a normal workday. The claimant could frequently perform all postural movements and could frequently come in contact with accepted environmental limitations (Exhibits 6F and 12F).

I find Dr. Holland's opinion of July 2010 only somewhat supported by the record and his opinion of April 2009 unsupported by the record. While I agree the claimant can perform work-related activities, I find the degenerative

changes in his lumbar spine would cause him to be more limited than opined by Dr. Holland. Therefore, I afford his opinions little weight.

(Tr. 25). Before the ALJ considered the medical opinions, including Dr. Holland's, he considered Plaintiff's symptoms, his daily life activities, and the contents of the consultative evaluations. He also considered x-rays and Plaintiff's treatment history (Tr. 23–24).

Plaintiff again stresses the fact the ALJ did not analyze the length of the relationship, or the nature and extent of the relationship. The Court understands Plaintiff's objection to be that the ALJ improperly accorded more weight to Dr. Holland's opinion than to Dr. Wood's opinion given these two, undiscussed factors. However, the Court has already concluded the ALJ gave "good reasons" for discounting Dr. Wood's opinion. The ALJ did not only discount Dr. Wood's opinion based on Dr. Holland's opinion, but did so considering other consultative examinations in the record and Dr. Wood's own clinical findings. The Court also concludes the ALJ appropriately considered Dr. Holland's opinion. The ALJ concluded Dr. Holland's opinion was only somewhat supported by the record, which he discussed in detail prior to his consideration of Dr. Holland's opinion. Moreover, the ALJ concluded he would provide *less* weight to this opinion and consider Plaintiff's condition more favorably than did Dr. Holland.

The Court has a "clear understanding" of why the ALJ rejected Dr. Wood's opinion and gave some credence to Dr. Holland's opinion, and the Court presumes Plaintiff does as well. *See Francis,* 414 Fed.Appx. at 805 ("Both we and Francis possess a 'clear understanding' of why the ALJ rejected Dr. Wakham's opinion. Noting Dr. Wakham's relationship with Fran-cis, the ALJ outlined the myriad ways in which the doctor's opinion conflicted with evidence in the record."). "The ALJ gave [Plaintiff] his procedural safeguard of reasons—meeting the goal of the regulation—and the only true disagreement lies within the merits of the reasons themselves." *Id.* Accordingly, the magistrate judge appropriately declined to remand this case to the Commissioner.

## IV. CONCLUSION

The Court has considered Plaintiff's objections after its complete review of the record, and has found it without merit. Accordingly, the Court **ACCEPTS** and **ADOPTS** the magistrate judge's R & R (Court File No. 16). The Court **DENIES** Plaintiff's motion for judgment on the pleadings (Court File No. 11), and **GRANTS** Defendant's motion for summary judgment (Court File No. 13). The Court **AFFIRMS** the Commissioner's decision and **DISMISSES** the case.

**An Order shall enter.**

## *JUDGMENT ORDER*

Plaintiff Robert Hatmaker ("Plaintiff") brought this action on May 2, 2012, seeking judicial review of the final decision of the Commissioner of Social Security ("Defendant") denying Plaintiff a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. The Court referred the matter to United States Magistrate Judge William B. Mitchell Carter, pursuant to 28 U.S.C. § 636(b) and in accordance with Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation ("R & R") regarding the disposition of Plaintiff's motion for judgment on the pleadings (Court File No. 11) and Defendant's motion for summary judgment

(Court File No. 13). The magistrate judge filed a R & R (Court File No. 16) recommending the decision of the Commissioner be affirmed, Plaintiff's motion for judgment on the pleadings be denied (Court File No. 11), Defendant's motion for summary judgment be granted (Court File No. 13), and the case be dismissed. Plaintiff timely filed an objection to the R & R (Court File No. 17).

For the reasons discussed in this order's accompanying memorandum, the Court **ACCEPTS** and **ADOPTS** the magistrate judge's R & R (Court File No. 16). The Court **DENIES** Plaintiff's motion for judgment on the pleadings (Court File No. 11), and **GRANTS** Defendant's motion for summary judgment (Court File No. 13). The Court **AFFIRMS** the Commissioner's decision and **DISMISSES** the case.

**SO ORDERED.**

*REPORT AND RECOMMENDATION*

WILLIAM B. MITCHELL CARTER, United States Magistrate Judge.

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner denying the plaintiff a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation regarding the disposition of Plaintiff's Motion for Judgment on the Pleadings (Doc. 11) and Defendant's Motion for Summary Judgment (Doc. 13), and Plaintiff's Response Memorandum in support of Reversal or Remand (Doc. 15).

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

*Plaintiff's Age, Education, and Past Work Experience*

Plaintiff was born on November 23, 1961 (Tr. 118), and was 49 years old at the time of the ALJ's decision. Plaintiff completed the 11th grade in high school (Tr. 147). Plaintiff had past relevant work experience as a construction painter and roofer (Tr. 22–Finding No. 6, 32).

*Applications for Benefits*

Plaintiff protectively filed applications for a period of disability, Disability Insurance Benefits, and Supplemental Security Income on February 9, 2009 (Tr. 13, 118–29). After a hearing on June 7, 2010, an ALJ issued a decision on September 24, 2010, finding Plaintiff not disabled and denying his applications (Tr. 10–28). The Appeals Council denied Plaintiff's Request for Review on March 12, 2012 (Tr. 1–6). Plaintiff has exhausted his administrative remedies and timely filed a civil action in this Court, and this case is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

*Standard of Review–Findings of the ALJ*

To establish disability under the Social Security Act, a claimant must establish he/she is unable to engage in any substantial gainful activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir.1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. § 404.1520. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he/

she is not disabled; (2) if the claimant does not have a severe impairment he/she is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he/she is disabled; (4) if the claimant is capable of returning to work he/she has done in the past he/she is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he/she is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. § 404.1520; *Skinner v. Secretary of Health & Human Servs.,* 902 F.2d 447, 449–50 (6th Cir.1990). Once, however, the claimant makes a prima facie case that he/she cannot return to his/her former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he/she can perform considering his/her age, education and work experience. *Richardson v. Secretary, Health and Human Servs.,* 735 F.2d 962, 964 (6th Cir.1984); *Noe v. Weinberger,* 512 F.2d 588, 595 (6th Cir.1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Landsaw v. Secretary, Health and Human Servs.,* 803 F.2d 211, 213 (6th Cir.1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson,* 440 F.2d 690, 691 (6th Cir.1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without inter-

ference by the courts. *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir.1994) (citing *Mullen v. Bowen,* 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Secretary, Health and Human Servs.,* 790 F.2d 450 n. 4 (6th Cir.1986).

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.

2. The claimant has not engaged in substantial gainful activity since December 31, 2003, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq*).

3. The claimant has the following severe impairments: degenerative changes of the lumbar spine, essential hypertension, slight tremor of the left upper extremity, depression, and anxiety (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light unskilled work as defined in 20 CFR 404.1567(b) and 416.967(b) except he would be limited to occasional grasping with his left upper extremity.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 23, 1961 and was 42 years old, which

is defined as a younger individual age 18–49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2003, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 15–23).

### Issues Presented

I. *Whether The ALJ Erred in Rejecting the Opinion of Physical Restrictions Assessed by the Treating Physician.*

II. *Whether the ALJ Erred in failing to address, in any way, the Opinion of the Mental Restrictions from Plaintiff's Treating Physician.*

### Relevant Facts

The record includes treatment notes from Dr. Frank Woods, Plaintiff's treating physician; a consultative exam of April 3, 2009, performed by Dr. William Holland; a March 2, 2009 Psychological Evaluation, performed by James Biller, MS, a Licensed Psychological Examiner and James Trevor Milliron, PhD; a Psychiatric Review Technique of March 16, 2009 from Dr. Marvin Blasé, a DDS psychiatrist; and an April 9, 2009, Physical Residual Functional Capacity Assessment performed by Dr. Kaniku Chaudhuri. The findings of these treating sources will be discussed in the Analysis section of this Report and Recommendation.

### Analysis

*The Rejection of the Treating Physician's Physical Restrictions:*

Plaintiff first contends the ALJ improperly evaluated the opinion of treating physician Dr. Frank Wood with respect to Plaintiffs physical limitations (Tr. 284–86) (Doc. 12, Plaintiffs Memorandum, pp. 7–10). On September 22, 2009, Dr. Wood opined that, during an eight-hour day, Plaintiff could (1) sit for one hour for 15 minutes at a time, and (2) stand and/or walk for one hour for 15 minutes at a time (Tr. 284). Dr. Wood's opinion that Plaintiff can only sit and stand/walk for a total of two hours per eight-hour day means that, in Dr. Wood's opinion, Plaintiff would be required to lie down for the remaining six hours per day. However the ALJ concluded the medical evidence was inconsistent with such an opinion.

Dr. Wood also opined that Plaintiff: (1) could lift/carry no more than five pounds infrequently; (2) required bed rest during a normal workday and would require one hour of rest for every 45 minutes of work performed; (3) experience moderately severe pain daily that would cause lapses in his concentration; and (4) could only infrequently use his hands for fine manipulation, typing, writing, and grasping small objects (Tr. 284–85).

A treating source opinion should be given controlling weight only when it is well-supported by clinical and laboratory findings and is consistent with the other evidence of record. *See* 20 C.F.R.

§§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4); *Crouch v. Secretary of Health & Human Servs.*, 909 F.2d 852, 856 (6th Cir.1990). The supportability of a treating physician's opinion depends on the degree to which the source presents relevant evidence to support the opinion, particularly medical signs and laboratory findings. *See* 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4). "It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." SSR 96–2p, 1996 WL 374188 (S.S.A.) *2 (1996). The Commissioner is not bound by a mere conclusory statement of a treating physician, particularly where it is unsupported by detailed, objective criteria and documentation. *See Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir.2001).

If an ALJ does not give controlling weight to the opinion of a treating source, the ALJ determines what weight the opinion is due based on the factors set forth in 20 C.F.R. §§ 404.1527, 416.927, including whether the opinion is supported by sufficient evidence and whether the opinion is consistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). If an ALJ declines to accord controlling weight to a treating physician opinion, the ALJ must provide good, specific reasons for the weight accorded the opinion. *See Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir.2004). This is a procedural safeguard ensuring that a claimant understands the disposition of his or her case, and that the ALL applied the treating physician rule so as to provide meaningful judicial review of that application. *See id.* at 544–45.

The ALJ discussed Dr. Wood's treatment notes (Tr. 25) and discussed Dr. Wood's September 2009 opinion, but accorded it no weight (Tr. 25). I conclude the ALJ gave adequate reasons for reaching this conclusion. He pointed out that there was no evidence to suggest Plaintiff's degenerative lumbar changes resulted in the marked limitations assessed by Dr. Wood (Tr. 25).

While discussing Dr. Wood's February 2010 opinion, the ALJ found that opinion was "also" inconsistent with the overall record and not supported by objective clinical findings (Tr. 25). I agree with the Commissioner that Dr. Wood's treatment notes lack the clinical findings to support his opinion, particularly his opinion that Plaintiff's physical limitation requires him to lie down for six hours per day (Tr. 281, 283, 290–92). The ALJ pointed out that lumbar spine x-rays did not show any nerve root impingement or significant disc space narrowing, and that Dr. Holland considered Plaintiff's lumbar spine degenerative changes to be mild (Tr. 22–24, 298–99).

The ALJ also pointed out Dr. Holland's observations that Plaintiff was able to ambulate well and move about the exam room without difficulty (21, 22–23, 25, 252, 294). The ALJ discussed Dr. Holland's July 2010 opinion that Plaintiff could perform a reduced range of medium work (Tr. 25, 299–304). *See* 20 C.F.R. §§ 404.1567(c), 416.967(c). The ALJ accorded Dr. Holland's opinion little weight because, although the ALJ agreed with Dr. Holland that Plaintiff could perform work-related activities, the ALJ believed that Plaintiff's lumbar spine impairment caused him to be more limited than Dr. Holland concluded (Tr. 25). Thus, the ALJ limited Plaintiff to light work (Tr. 23–26, Finding No. 5).

The ALJ also discussed the opinions of state agency physicians Drs. Chaudhuri and Pennington that Plaintiff could perform medium work (Tr. 25, 242–50, 259).

As with Dr. Holland's opinion, the ALJ accorded their opinions little weight because the ALJ concluded that Plaintiff's lumbar spine impairment resulted in greater physical limitations (Tr. 25). I conclude the ALJ did not err by according more weight to the state agency physicians' opinions than to Dr. Wood's opinion. *See Helm v. Comm'r of Soc. Sec.*, 405 Fed.Appx. 997, 1001–02 (6th Cir.2011) (ALJ was not required to give relatively less weight to state agency physician opinions simply because they are contrary to treating physician opinion; SSR 96–6p, 1996 WL 374180, *2 (1996) provides that in appropriate circumstances, state agency physician opinions may be entitled to greater weight than treating or examining physician opinions). The ALJ also found that Plaintiff's household activities are inconsistent with Dr. Wood's opinion (Tr. 25). The ALJ specifically stated that he considered the medical opinion evidence of record according to the requirements of 20 C.F.R. §§ 404.1527, 416.927 (Tr. 19). *See Francis v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 802, 804 (6th Cir.2011) (the regulations require the ALJ to consider these factors; they do not require the ALJ to engage in "an exhaustive factor-by-factor analysis."). I agree with the Commissioner that the ALJ's decision, taken as a whole, shows that he gave adequate reasons for according Dr. Wood's opinion no weight. He made an evaluation noting the opinion is inconsistent with the overall record, including the opinions of Drs. Holland, Chaudhuri, Pennington, Dr. Holland's observations during his exams, Plaintiffs lumbar spine x-rays, and Plaintiff's household activities. He further noted Dr. Wood's opinion is not supported by his own clinical findings on exam. *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir.2009) (ALJ's stated reason for rejecting the treating physician's opinion, though brief, was adequate because it

reached several of the factors in the regulations); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir.2009) (ALJ did not err in discounting treating physician's assessment where it was conclusory and inconsistent with the other evidence in the record); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir.2007) (the ALJ's decision not to give treating source's opinions controlling weight because the opinions were "inconsistent with the overall evidence of record" was "a factual determination within [the ALJ's] discretion"); *Crouch*, 909 F.2d at 856; *Buxton v. Halter*, 246 F.3d at 773; 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4); SSR 96–2p, 1996 WL 374188.

Dr. Wood opined on February 9, 2010, that Plaintiff is unable to work (Tr. 281). The ALJ properly rejected this opinion because it is "also" inconsistent with the overall record and not supported by objective clinical findings (Tr. 21).

The issue of whether an individual is disabled or unable to work is ultimately reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d) (opinions that a claimant is "disabled" or "unable to work" are not medical opinions and are not given "any special significance;" they are "opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."); SSR 96–5p, 1996 WL 374183 (S.S.A.) *5 (1996) (even treating physician opinions on issues reserved to the Commissioner are never given controlling weight). The Sixth Circuit has acknowledged that "[t]he determination of disability is ultimately the prerogative of the Commissioner, not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir.2004) (quotations and brackets omitted); *see also Turner v.*

*Comm'r of Soc. Sec.,* 381 Fed.Appx. 488, 492–93 (6th Cir.2010).

*The Rejection of the Mental Restrictions from Plaintiff's Treating Physician:*

Plaintiff next argues the ALJ did not properly evaluate Dr. Wood's opinion with respect to Plaintiff's mental limitations. In September 2009, Dr. Wood opined that Plaintiff's ability to perform several mental work-related activities was either "fair" (ability to function usually satisfactory, but at times limited or precluded) or "poor" (ability to function usually precluded) (Tr. 287–89). In both his Memorandum and Response Memorandum, Plaintiff argues the ALJ never mentioned Dr. Wood's mental opinion in his decision. The Commissioner concedes there is no specific discussion of Dr. Wood's opinion as to Plaintiff's mental limitations but argues it is harmless error. For reasons that follow, I agree.

*Wilson* provided that a *de minimis* violation of 20 C.F.R. § 404.1527(d)(2) may qualify as harmless error, including where: (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; or (2) the Commissioner met the goal of 20 C.F.R. § 1527(d)(2), even though he has not complied with the terms of the regulation. *See id.* at 547.[1] The present case constitutes harmless error under both examples.

In this case the ALJ did not ignore Plaintiff's mental condition, and although he did not directly address the specific limitations assessed by Plaintiff's treating physician, it is evident from his opinion that he did consider the treatment from his physician as well as the other opinions of record related to his mental condition.

In his decision the ALJ addresses this issue:

The claimant has further alleged disability secondary to anxiety and depression. Dr. Wood did prescribe medication for depressive symptomatology (Exhibit 11F) and the claimant has continued to allege sleep disturbances and excessive worry (Exhibit 3F). However his statements do not suggest mental limitations of such severity as to preclude any work activity. Indeed, the claimant has not sought mental health treatment and his GAF score was noted to be 70 suggesting only a mild limitation of function (Exhibit 3F). Mentally, the claimant can still perform unskilled work.

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

As for the opinion evidence, Mr. Biller opined the claimant is functioning in the average range of intelligence without psychotic symptoms. He appeared to have a mild level of depression and anxiety secondary to his declining physical health and related life problems. He also opined his ability to understand and remember simple and/or detailed instructions appears to be unaffected; his ability to sustain concentration and be persistent with work processes appears to be mildly affected due to depression and anxiety; his ability to interact with peers and supervisors in a standardized

---

1. The March 26, 2012, revisions to 20 C.F.R. resulted in §§ 404.1527(d), 416.927(d) being relettered as §§ 404.1527(c), 416.927(c). However, no substantive changes were made to the subsections. Given that the cases cited below refer to former §§ 404.1527(d)(2), 416.927(d)(2), in the interest of clarity, the Commissioner will do likewise.

work setting appears to be minimally affected due to depression and anxiety; and his ability to adapt to changes in the work environment and to be aware of hazards appears to be unaffected (Exhibit 3F). I find Mr. Biller's opinion well supported by the record and give it substantial weight. His opinion is substantiated by medically acceptable clinical diagnostic techniques and is consistent with the other substantial evidence in the claimant's case record.

Tr. 24–25

. . .

The State agency's psychological examiners reviewed the claimant's file as it stood on March 16, 2009 and opined the claimant's mental impairments were not severe. I find this opinion to be inconsistent with the medical record as the claimant's treating physician prescribed medication for the claimant's depressive symptomatology. Therefore, I give this opinion little weight.

Tr. 26

Dr. Wood's opinion is so patently defective that the Commissioner could not possibly credit it. As the Commissioner argues, Dr. Wood's opinion regarding Plaintiffs mental limitations is outside his area of expertise because he is not a psychiatrist or a psychologist and his treatment notes do not indicate any clinical findings or mental status exams supporting any mental limitations, let alone disabling mental limitations (Tr. 281, 283, 290–92). On the opinion form he completed, Dr. Wood did not identify a single medical/clinical finding to support his opinion when the form specifically asked for a description or discussion of medical/clinical findings to support his assessment. (Tr. 289). *See Durio v. Comm'r of Soc. Sec.*, 1996 WL ·169362 (6th Cir. Apr. 10, 1996) (treating physician's report not entitled deference where it "appears

to be a characterization of the plaintiff's complaints, rather than the results of any independent medical evaluation"). Further, although Dr. Wood's treatment notes are largely illegible, it appears that the first, and only, time he diagnosed depression was on September 22, 2009, which is a day after he completed his opinion regarding Plaintiff's mental limitations on September 21, 2009 (Tr. 284–89). Since Dr. Wood's opinion is so patently defective that the Commissioner could not possibly credit it, the fact that the ALJ did not discuss it constitutes a *de minimis* violation of 20 C.F.R. § 404.1527(d)(2) and is harmless error. *See Wilson*, 378 F.3d at 547. The ALJ specifically noted Dr. Wood prescribed medication for depressive symptomatology and of Plaintiffs allegation of sleep disturbance and excessive worry but relied on the opinion of Mr. Biller. Although he gave the opinion little weight, the ALJ also referred to the conclusion of the Psychiatric Review Technique prepared by Dr. Marvin Blasé in which he found Affective Disorders and Anxiety–Related Disorders to be not severe. It seems implicit from the record as a whole that the ALJ rejected the opinion of Dr. Wood as it related to Plaintiff's mental condition.

In *Hall v. Comm'r of Soc. Sec.*, 148 Fed.Appx. 456 (6th Cir.2005), the Sixth Circuit interpreted another example of harmless error, i.e., the Commissioner met the goal of 20 C.F.R. § 1527(d)(2) even though he has not complied with the terms of the regulation. *See ·Nelson v. Comm'r of Soc. Sec.*, 195 Fed.Appx. 462, 469–71 (6th Cir.2006). The court in *Hall* stated that harmless error could occur where the ALJ generally analyzes the impairments addressed by the treating source's opinion so as to indirectly attack the supportability of the opinion or the consistency of the

opinion with the record as a whole, both of which are grounds for rejecting a treating source opinion under 20 C.F.R. § 404.1527(d)(2). *See Nelson,* 195 Fed. Appx. at 469–71.

The court in *Nelson* applied this analysis and found the ALJ there met the goal of 20 C.F.R. § 404.1527(d)(2). *See Nelson,* 195 Fed.Appx. at 470. In *Nelson,* the ALJ's evaluation of the plaintiff's mental impairments indirectly attacked both the supportability of the treating source opinions and the consistency of those opinions with the rest of the record evidence and, thus, the ALJ implicitly provided sufficient reasons for not giving those opinions little or no weight overall. *See Nelson,* 195 Fed.Appx. at 470–72. I conclude that was done in this case.

The ALJ's evaluation of Plaintiff's mental impairments here indirectly attacked Dr. Wood's opinion. As shown above, the ALJ discussed the exams and opinion of Mr. Biller and Dr. Milliron, and the opinion of Dr. Blase, all of which are inconsistent with, and do not support, and are in fact contrary to Dr. Wood's opinion regarding Plaintiff's mental limitations. The ALJ pointed out twice (Tr. 20–21, 24) that the GAF score of 70 assessed by Mr. Biller and Dr. Milliron shows only some mild symptoms or some difficulty in functioning (Tr. 225). *See DSMIV–TR* at 34. The ALJ also noted that (Tr. 20) Mr. Biller and Dr. Milliron considered Plaintiff's depression and anxiety to be mild (Tr. 225). Further, the ALJ discussed their opinion that Plaintiffs abilities to perform mental work-related activities were, at most, only minimally-to-mildly affected due to depression and anxiety (Tr. 25, 225).

The ALJ also discussed the opinion of Dr. Blase that Plaintiff does not have a "severe" mental impairment (Tr. 22, 228–40), and noted that Plaintiff had not sought mental health treatment (Tr. 20). The ALJ

pointed out that Dr. Wood prescribed medication for Plaintiff's depressive symptoms (Tr. 20, 22). However, as shown above, Dr. Wood's opinion is not well-supported or explained by medical signs and laboratory findings. *See Nelson,* 195 Fed. Appx. at 471–72 (in finding the ALJ indirectly attacked the treating physicians' opinions, the court noted that the opinions were not well-supported or explained by medical signs and laboratory findings). Moreover, the ALJ found that Plaintiff's subjective statements regarding his mental symptoms did not suggest mental limitations of such severity so as to preclude any work activity (Tr. 20). This is similar to the ALJ's statement in *Nelson* that there are no medical findings to show the plaintiff's RFC was significantly compromised. *See Nelson,* 195 Fed.Appx. at 471–72.

I conclude the ALJ met the goal of 20 C.F.R. § 404.1527(d) by discussing the medical evidence and opinions related to Plaintiff's mental impairments and by indirectly attacking Dr. Wood's opinion. Thus, remand for the ALJ to simply evaluate Dr. Wood's unsupported and inconsistent opinion would serve no purpose. *See Nelson,* 195 Fed.Appx. at 470–72; *see also NLRB v. Wyman–Gordon,* 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) (plurality opinion) (where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game"); *Higgs v. Bowen,* 880 F.2d 860, 861 (6th Cir.1988) (the ALJ's failure, if any, to be "more thorough and articulate" in his decision is not reversible error where his intent is clear); *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir.1989) ("No principle of administrative law or common sense requires us to remand ... unless there is reason to believe that the remand might lead to a different result."); *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir.1988) (pro-

cedural perfection in administrative proceedings is not required; the court will not vacate a judgment unless the substantial rights of a party have been affected); *but see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742 (6th Cir.2007) (remanding under *Nelson* analysis where ALJ did not mention treating psychologist opinion); *Earnest v. Astrue*, No. 1:08–CV–225, 2009 WL 3614813 (E.D.Tenn. Oct. 26, 2009) (finding no harmless error under *Wilson* where ALJ did not mention treating physician opinion).

### Conclusion

Having carefully reviewed the entire administrative record and the briefs of the parties filed in support of their respective motions, I conclude there is substantial evidence in the record to support the findings of the ALJ and the decision of the Commissioner, and neither reversal nor remand is warranted on these facts. Accordingly, I RECOMMEND:

(1) The plaintiff's motion for judgment on the pleadings (Doc. 11) be DENIED.

(2) The defendant's motion for summary judgment (Doc. 13) be GRANTED.

(3) The case be DISMISSED.[2]

May 23, 2013.

2. Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order.

*Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir.1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir.1987).