NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0151n.06

No. 09-6263

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Mar 16, 2011**
LEONARD GREEN, Clerk

DARRELL C. FRANCIS,                      )
                                         )
    Plaintiff-Appellant,                 )
                                         )   ON APPEAL FROM THE UNITED
v.                                       )   STATES DISTRICT COURT FOR THE
                                         )   EASTERN DISTRICT OF TENNESSEE
COMMISSIONER SOCIAL SECURITY             )
ADMINISTRATION,                          )
                                         )
    Defendant-Appellee.                  )

Before:  KEITH, KENNEDY, and COOK, Circuit Judges.

COOK, Circuit Judge.  Darrell Francis asks us to review the district court's judgment upholding the decision of an administrative law judge ("ALJ") that denied him disability benefits under the Social Security Act.  *See* 42 U.S.C. §§ 416(i), 423(d), 1382c.  We affirm.

I.

While working in maintenance for the University of Tennessee, Francis began to experience pain throughout his body.  Though he managed this pain for several years, a work-related fall from a ladder allegedly rendered it so intolerable that he found himself unable to continue working.  Francis applied for Social Security disability benefits, and the agency granted him a hearing.

At the hearing, an ALJ reviewed Francis's medical and functional history to determine the severity of his impairments. Diagnostic tests demonstrated that Francis suffered from degenerative ailments, a limited range of spinal motion, and pain; but the tests did not support acute disc herniations or significant neurological or motor deficits. Treatment records disclosed that, after his accident, his physicians primarily prescribed pain relievers and physical therapy. And testimony concerning his daily activities revealed that he routinely shopped, cooked for himself, and performed household chores, including making beds, washing dishes, and vacuuming.

As agency regulations require, the ALJ also considered the opinions of Francis's physicians on his functional capacity. Dr. Pinzon, a treating orthopedic surgeon, opined that Francis could perform average-exertion work, lifting sixty pounds occasionally or thirty pounds frequently. Dr. Kennedy, an examining orthopedic surgeon, believed that Francis could lift twenty pounds occasionally or ten pounds frequently, and that he should alternate as necessary between sitting and standing. But Dr. Wakham, a treating family osteopath, assigned greater severity to Francis's condition. He appraised Francis's lifting ability at ten pounds occasionally and five pounds frequently, and maintained that, if Francis were to work, he would miss four days per month due to his condition, and his pain would cause lapses in his concentration for several hours each day.

The ALJ assessed the medical evidence, Francis's testimony, and the opinions of Francis's physicians, and found that Francis possessed functional limitations in line with Dr. Kennedy's assessment. In coming to this conclusion, the ALJ noted that he assigned no weight to Dr. Wakham's

opinion because it conflicted with the other medical opinions, the medical evidence, Francis's conservative treatment, and his daily activities.

Weighing Francis's functional capacity along with his age, education, and experience, the ALJ then determined, with the help of a vocational expert, that the national economy included a significant number of jobs he could perform. Because this evaluation supported the notion that Francis could find suitable employment, the ALJ concluded that Francis did not suffer from a "disability" under the Social Security Act and denied his claim.

Francis sought review of this decision from the Appeals Council. The Council denied his request and adopted the ALJ's decision. Francis then filed this action in the district court, which granted summary judgment to the Commissioner.

II.

We review the district court's decision de novo, asking only whether the ALJ's decision (a) conforms to proper legal standards and (b) finds support in substantial evidence. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Francis contends that it does neither.

A.

Francis initially argues that the ALJ's decision commits procedural error—and thus fails to conform to proper legal standards—by insufficiently accounting for certain medical opinions from his treating physicians. We disagree.

Agency regulations instruct an ALJ to thoroughly consider medical opinions from a disability claimant's treating physicians. Such opinions receive "controlling weight" unless the ALJ finds them unsupported or "'inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (alteration in original) (quoting 20 C.F.R. § 404.1527(d)(2) (2004)). When a treating-source opinion does not deserve "controlling weight," the ALJ still considers the opinion in accordance with certain factors. *See* 20 C.F.R. § 404.1527(d)(2). ALJ written decisions must ultimately contain "good reasons . . . for the weight [they] give" the opinion, *id.*, and their explanation "must be sufficiently specific to make clear to any subsequent reviewers the weight [given] to the treating source's medical opinion and the reasons for that weight," SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996). If an ALJ's decision flouts these procedural rules, we affirm only if we find the error harmless. *See, e.g.*, *Wilson*, 378 F.3d at 546–47.

Francis begins his procedural argument by contending that, in determining his functional capacity, the ALJ's decision gave short shrift to his physicians' opinions regarding his pain. He notes that Dr. Wakham described his pain as "intractable," "severe," and "extreme"; Dr. Kennedy opined that he suffers from a "painfully disabling condition"; and Dr. Killefer (a treating surgeon) called his pain

"persistent" and "fairly severe." These statements count as independent medical opinions, he argues, yet went unmentioned in the ALJ's decision. We do not view them quite this way.

The pain-related opinions of Drs. Wakham and Kennedy underpinned the doctors' capacity-to-work opinions, which the ALJ expressly considered. Dr. Wakham, in his report on Francis's functional capacity, noted both Francis's pain and his physical impairments; and Dr. Kennedy, in his independent medical evaluation, described Francis's pain, concluded that he had a 10% physical impairment, and then determined his functional limitations.

Dr. Killefer's pain-related statement, on the other hand, is not a "medical opinion" at all—it merely regurgitates Francis's self-described symptoms. *See* 20 C.F.R. § 404.1527(a)(2). And even if this were a medical opinion, we would deem its omission from the ALJ's decision harmless because the ALJ nevertheless "ma[de] findings consistent with the opinion." *Wilson*, 378 F.3d at 547. In the very same document to which Francis points, Dr. Killefer notes that Francis was "tolerating this [pain] and working." If we can fairly ascribe any "opinion" to this report, it is that Francis suffers from pain but can still work—an "opinion" consistent with the ALJ's ultimate determination.

Apart from his pain-related arguments, Francis complains that the ALJ neglected two 20 C.F.R. § 404.1527(d)(2) factors in weighing Dr. Wakham's opinion: the "[l]ength of the treatment relationship and the frequency of examination" and the "[n]ature and extent of the treatment relationship" between Francis and Dr. Wakham. 20 C.F.R. § 404.1527(d)(2)(i)-(ii). Although the regulations instruct an ALJ

to consider these factors, they expressly require only that the ALJ's decision include "good reasons . . . for the weight . . . give[n] [to the] treating source's opinion"—not an exhaustive factor-by-factor analysis. *Id.* § 404.1527(d)(2). Here, the ALJ acknowledged Dr. Wakham's role as Francis's "treating family osteopath." In assigning no weight to his opinion, the ALJ cited the opinion's inconsistency with the objective medical evidence, Francis's conservative treatment and daily activities, and the assessments of Francis's other physicians. Procedurally, the regulations require no more.

Nor would it matter, in this case, if they did. Because the treating-source rule is not "a procrustean bed, requiring an arbitrary conformity at all times," *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (per curiam), we excuse a decision's noncompliance with its provisions "where [the decision] has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though [it] has not complied with the terms of the regulation," *Wilson*, 378 F.3d at 547. So long as the decision "permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion," we look past such procedural errors. *Friend*, 375 F. App'x at 551.

Both we and Francis possess a "clear understanding" of why the ALJ rejected Dr. Wakham's opinion. Noting Dr. Wakham's relationship with Francis, the ALJ outlined the myriad ways in which the doctor's opinion conflicted with evidence in the record. The ALJ gave Francis his procedural safeguard of reasons—meeting the goal of the regulation—and the only true disagreement lies within the merits of the reasons themselves. We thus find any procedural error harmless.

B.

In addition to his purely procedural arguments, Francis challenges the merits of the ALJ's "good reasons" for rejecting Dr. Wakham's medical opinion, deeming them unsupported by substantial evidence.

The agency's treating-source rule permits an ALJ to reject a treating source's opinion if substantial evidence in the record contradicts it. 20 C.F.R. § 404.1527(d)(2). Substantial evidence "'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). When substantial evidence supports an ALJ's decision, we affirm even if we would have decided differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam), and even if substantial evidence also supports the opposite conclusion, *see Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

The ALJ rejected Dr. Wakham's opinion because he found the "severe functional limitations" it assigned to Francis inconsistent with (1) objective medical evidence; (2) Francis's daily activities; (3) Francis's treatment; and (4) the opinions of other physicians. Substantial evidence supports his view.

First, the relatively benign nature of Francis's scans, x-rays, and clinical exams conflicted with the limitations Dr. Wakham described. Francis's back tests revealed no significant non-degenerative issues, shoulder and knee testing were normal, and neurological tests demonstrated no severe problems.

Though Francis maintains that the ALJ ignored the painful nature of these conditions, the ALJ simply found that Francis's complaints of severe pain were inconsistent with Dr. Wakham's limitations.

Second, the ALJ reasonably found that an individual with "severe functional limitations" would find it difficult to engage in Francis's daily activities. The ALJ explained that Francis prepares meals, manages his finances, and helps with various chores, including vacuuming. Francis counters that these activities do not "evince an ability to perform full time work on a regular and continuing basis." But a reasonable person could deem Francis's activity levels as more consistent with the view that he is suffering manageable impairments than the view that he is experiencing severe limitations—and this is all that the substantial-evidence standard demands.

Third, the ALJ reasonablely viewed Francis's limited treatment as inconsistent with Dr. Wakham's opinion. While Francis has been no stranger to a doctor's office, all of his recent treatments were conservative and largely confined to pain medications. Francis argues that consuming pain medication is itself evidence that he experiences moderate to severe pain, as Dr. Wakham opined. But it is just as consistent with a finding that Francis's medications adequately manage his pain and enable him to work full time with some restrictions. This, again, is all that the substantial-evidence standard requires.

Last, the ALJ rightly focused on the discrepancy between the severity of Dr. Wakham's assessment and the moderate diagnoses of Francis's surgeons. Francis reconciles this conflict by

maintaining that the surgeons' functional-capacity opinions did not account for his pain, and that, if they had, they would align with Dr. Wakham's—a viewpoint we rejected in our earlier treatment of the topic.

The ALJ thus cited specific conflicts between Dr. Wakham's opinion and substantial medical, lifestyle, and opinion evidence. Because substantial evidence supports his decision to reject the opinion, we look no further into its merits. *See Mullen*, 800 F.2d at 545; *Kinsella,* 708 F.2d at 1059.

III.

For these reasons, we affirm.