NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0812n.06

No. 10-1854

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| K. LEEMAN, a minor, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| COMMISSIONER OF SOCIAL SECURITY, | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

Before: KENNEDY, GIBBONS, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. In February 2005, K. Leeman's parents took him to see a psychologist. They reported that Leeman was an aggressive six-year-old with a history of hyperactivity and poor academic performance. The psychologist referred Leeman to Dr. Sarabjit Tokhie for long-term therapy. Dr. Tokhie diagnosed Leeman with attention deficit disorder and oppositional defiant disorder. Around the same time, Leeman's parents filed an application for disability benefits.

School records for the following years reveal problems completing assignments, staying organized, socializing, and behaving. Yet those records were not uniformly bad. A progress report for the 2006–2007 academic year, for instance, said that Leeman had "worked hard" to control

himself and that he had "done a great job both academically and with his behavior." And in January 2008, Leeman's parents said they had not received any recent complaints from Leeman's school.

In July 2008, an ALJ ruled on Leeman's disability application. The ALJ initially determined that Leeman's ailments caused Leeman more than "minimal functional limitations," a necessary prerequisite to receiving benefits. *See* 20 C.F.R. § 416.924(c), (d). But the ALJ then found that those ailments did not result in "marked limitations"—meaning "more than moderate" but "less than extreme" limitations—in "two domains of functioning," as the regulations required. *See* 20 C.F.R. § 416.926a(a), (e)(2)(i). He discounted a report by Dr. Tokhie that Leeman suffered marked limitations in three domains: acquiring and using information, attending and completing tasks, and interacting with others. Instead, the ALJ concluded that Leeman suffered a marked limitation in only one, interacting with others.

Leeman says the ALJ should have deferred to Dr. Tokhie's opinion that Leeman's ability to attend and complete tasks is markedly limited. He notes that treating-physician opinions deserve great weight. *See Gaskins v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 474 (6th Cir. 2008). And yet, he argues, the ALJ perfunctorily rejected Dr. Tokhie's opinion on the unsupported theory that school records show that Leeman was "stable" and showed "improvement."

We conclude that substantial evidence supports the ALJ's decision to discount Dr. Tokhie's opinion. *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 805–06 (6th Cir. 2011). ALJs may discount treating-physician opinions that are inconsistent with substantial evidence in the record, like the physician's own treatment notes. *See Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 112–13 (6th Cir. 2010); *Gaskins*, 280 F. App'x at 475. And the ALJ here specifically pointed to Dr.

Tokhie's treatment notes in rejecting Dr. Tokhie's opinion. For instance, Dr. Tokhie noted that Leeman showed "good concentration, attention, and focus." *See* A.R. 232, 236, 238, 250. He also said that Leeman was "coherent" and had good eye contact. *See* A.R. 238, 242, 245. And Dr. Tokhei observed that Leeman's academic performance was improving—hardly a characteristic of someone with trouble attending and completing tasks. *See* § 416.926a(h)(2)(iv).

The ALJ might have added that Leeman swam and did an "age appropriate job" taking out the trash, vacuuming, and folding clothes. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2008). In contrast, children with attention problems struggle to participate in group sports and complete chores. *See* 20 C.F.R. § 416.926a(h)(2)(iv).

Leeman responds that a consulting physician, Dr. John Jeter, "affirmed the very diagnoses relied upon by the treating physician." But this argument is beside the point: The ALJ disagreed with Dr. Tokhei's view of the severity of Leeman's condition, not Dr. Tokhei's diagnosis. Moreover, another consultant, Dr. Paul Liu, specifically opined that Leeman suffered no marked limitations.

We affirm the district court's judgment.